**Leo B. BATTO, Appellant,**

v.

**Ronnie L. GAFFORD, Appellee.**

**No. 10–01–093–CV.**

Court of Appeals of Texas, Waco.

Aug. 20, 2003.

Kenneth H. Keeling, Huntsville, for appellant.

Robert C. Dunn, Lowell O. Dunn, Robert C. Dunn & Associates, Corsicana, for appellee.

Before Chief Justice DAVIS (not participating), Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

Ronnie Gafford thought he had the opportunity of a lifetime. He believed Leo Batto offered him his farm in return for taking care of Batto and his wife and for taking care of the farm. The Gaffords uprooted their home, cleared a plot on and moved to the Batto farm, and began working for Batto. Gafford provided hay; he penned and hauled cattle; he made bridges; he cleared land; and he built and mended fences.

After eleven years of toil, Gafford and his family were evicted by Batto with only four days notice. Gafford never billed Batto for all his labors and hay because he thought Batto was going to give him the farm. After Batto evicted the Gaffords,

Gafford wanted what he thought he was owed. He sued pursuant to a common-law fraud theory. The jury found Batto committed fraud and awarded Gafford damages. Batto appeals.

#### INTENT TO FULFILL PROMISE

In his first issue, Batto contends there is no evidence to support the jury's answer to Question 1 regarding fraud. Specifically, he argues there is no evidence Batto had no intention of carrying out a promise.

#### LAW-Fraud

■ A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986); *Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex.1971). While it is the party's intent at the time the representation was made by the party which must be determined, intent may be inferred from the party's acts after the representation is made. *Spoljaric,* 708 S.W.2d at 434. Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony. *Id.* Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made. *Id.* at 435. However, that fact is a circumstance to be considered with other facts to establish intent. *Id.; see also Columbia/HCA Healthcare Corp. v. Cottey,* 72 S.W.3d 735, 745 (Tex.App.-Waco 2002, no pet.). Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *Id.* "Slight circumstantial evidence" of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent. *Id.; Columbia/HCA,* 72 S.W.3d at 745. A party's

denial that he ever made a promise is a factor showing no intent to perform when the promise was made. *Id.; O'Boyle,* 462 S.W.2d at 272.

#### *LAW-Standard of Review*

■ In conducting a no-evidence review, an appellate court must "view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." *Excel Corp. v. Apodaca,* 81 S.W.3d 817, 820 (Tex.2002); *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 612 (Tex.App.-Waco 2000, pet. denied).

#### *EVIDENCE*

■ Gafford testified that he had started selling hay to Batto in 1981 or 1982. Gafford stated that, sometime in the spring of 1986, Batto came to his house and made him an offer that if Gafford and his family moved onto the Batto farm and helped with the farm chores, Batto would see to it that Gafford would "end up with the place." To Gafford, the offer sounded like a "golden opportunity." The Gaffords moved onto the property in the fall of 1986 and made improvements on approximately 11 acres where they lived. Gafford testified that from 1986 through the fall of 1997, he fixed fences, penned and hauled cattle, built an addition to the Batto house, and shredded pastures. He provided hay to Batto through 1995. In October of 1997, Gafford received a letter from Batto informing him that he had defaulted on the agreement and that the "rental or lease agreement" was cancelled. Batto gave the Gaffords four days to gather up their property and move off the land. After the

termination of the agreement, Gafford believed Batto never intended to give him the land.

Janie, Gafford's wife, also recalled Batto coming to their house and proposing that if they moved to the Batto property and took care of the Battos and the farm, the place would be theirs. Janie testified that in 1997, she discovered Batto was not going to live up to the representations he made. She believed he never intended to keep his promise.

Batto testified initially that Gafford would get a place to live in return for helping him with the work around the farm, including penning cows, hauling calves and fixing fences. He denied that Gafford was renting from him. Batto stated that Gafford first approached him about buying one acre from him. Batto said he talked it over with his wife and decided to let Gafford move his trailer house onto the property. Batto denied that he made any agreement with the Gaffords at their house. He could not remember when he had made what kind of offer to them. Batto was reminded that he stated at a deposition that he never contended he was going to sell the land. At the deposition, Batto had stated that when Gafford asked to buy an acre, he offered 12 acres for the Gaffords to live on until Batto and his wife died as long as Gafford helped out with the farm. When they died, Batto would deed the 12 acres to Gafford. Batto denied that he ever agreed to deed the remainder of his property to Gafford. Batto then denied that Gafford lived up to his end of the bargain although he had no problems with Gafford through 1996.

*APPLICATION*

Evidence presented by Gafford of Batto's breach of his promise to give the

Gaffords his land when he evicted the Gaffords is a factor to be considered in establishing intent not to perform. Batto's denial of an agreement that included the promise to give the Gaffords his land is also a factor to be considered in the determination of whether Batto had no intent to perform the promise. Other "slight circumstantial evidence" includes testimony from Batto that Gafford did not rent the 12 acres; however, when Gafford received the eviction notice, he was considered and treated as a renter. Also, Batto testified that although he had no problems with Gafford through 1996, he denied that Gafford lived up to his end of the bargain. Considering this evidence together, there is more than a scintilla of evidence to support the jury's finding of fraud, specifically that Batto had no intention of performing his promise to the Gaffords at the time he made the promise. Batto's first issue is overruled.

**LIMITATIONS**

■ In his third issue, Batto contends the limitation period was established as a matter of law. Specifically, he argues that Gafford admitted in his Second Amended Original Petition that the promise was broken in 1986 when Batto failed to deed over the 11 to 12 acres [1] of land Gafford cleared for a place to live.

The statute of limitations for fraud actions is four years from the date the cause of action accrued. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (Vernon 2002).

■ The Supreme Court has held that "[a]ssertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex.

---

1. The pleadings allege 20 acres were to be deeded to the Gaffords. However, the testimo-

ny established that the acreage was approximately 11 to 12 acres.

2001); *Houston First American Savings v. Musick,* 650 S.W.2d 764, 767 (Tex.1983). Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence. *Houston First American,* 650 S.W.2d at 767. And a judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact. *Holy Cross Church,* 44 S.W.3d at 568; *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 467 (Tex.1969).

The portion of Gafford's petition which Batto claims is an admission is as follows:

> This suit arises from an oral contract made in Leon County between Gafford and Batto, in which Batto promised to compensate Gafford and to convey real property in Leon County, in the J. Underwood and the A.H. Wilkerson Surveys, to Gafford, a portion of which was to be conveyed when Gafford moved onto the property and made improvements thereon, being in the amount of twenty (20) acres, more or less. . . .

This portion of Gafford's petition is hardly a clear and unequivocal admission. It suggests that Batto was to convey 20 acres when the Gaffords moved onto the farm. It does not admit that Gafford knew Batto intended to breach his agreement when no deed was provided. Only with testimony provided at trial do we discover that Batto never delivered a deed to the partial acreage. This is not a clear and unequivocal admission in Gafford's pleadings.

Batto's third issue is overruled.

We decline to address Batto's second and fourth issues, the factual sufficiency of the evidence to support the jury's answers to Questions 1 and 3, because they are inadequately briefed[2] and present nothing for review. *See* Tex.R.App. P. 38.1(h); *Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex. 1994); *American Derringer Corp. v. Bond,* 924 S.W.2d 773, 788 (Tex.App.-Waco 1996, no writ).

### Conclusion

Having overruled Batto's properly briefed issues, we affirm the trial court's judgment.

---

**2.** Batto cites no standard to review the factual sufficiency of the evidence and presents no argument in support of those issues.