**Parrish Todd DORTON, Appellant,**

v.

**Thomas G. CHASE. Jr., Appellee.**

**No. 10–07–00098–CV.**

Court of Appeals of Texas,
Waco.

July 2, 2008.

Michael G. Cosby, Pakis Giotes Page & Burleson PC, Rex Davis, Sheehy Lovelace & Mayfield, PC, Waco, for appellant.

Pat Beard, Beard Kultgen Brophy Bostwick & Dickson, Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

### OPINION*

TOM GRAY, Chief Justice.

Thomas Chase and Parrish Todd Dorton had a business relationship. They were also friends. When the business relationship soured, so did the friendship. They eventually entered into a Settlement Agreement. But Chase then sued Dorton over a debt on bank notes which Chase paid and alleged that Dorton owed. Dorton agreed that he owed the debt, unless he was excused. As defenses to the lawsuit, Dorton asserted four ways he was excused from paying the debt: assumption; waiver; estoppel by contract involving a memorandum signed by Chase; and estoppel by contract involving a Guaranty Agreement signed by Chase. Dorton also filed a counter-claim against Chase for breach of contract for not complying with the Settlement Agreement. After a trial on the merits, a jury agreed with Dorton on the assumption and the two estoppel by contract defenses. The jury also agreed that Chase breached the Settlement Agreement. The jury did not find for Dorton on his waiver defense. The trial court, however, granted Chase's motion for judgment notwithstanding the verdict and rendered a judgment in Chase's favor. Chase was also awarded attorney's fees.

On appeal, Dorton argues that the trial court erred in granting Chase's motion for judgment notwithstanding the verdict as to

* *See* footnote 1.

Questions 1(a) (assumption), 1(c) (estoppel-memorandum), and 1(d) (estoppel-Guaranty Agreement). Dorton only needs to prevail on any one of the three defenses on which the jury answered yes: assumption, estoppel by contract (memorandum), and estoppel by contract (Guaranty Agreement) to reverse the trial court's judgment. Alternatively, in his second issue, Dorton claims he should prevail as a matter of law on the issue of waiver to which the jury answered "no" (Question 1(b)), and to which Dorton filed his own motion for judgment notwithstanding the verdict. Dorton's motion was denied. Dorton further contends on appeal that Chase is not entitled to attorney's fees and that he, Dorton, is entitled to his attorney's fees.

Chase submits two counter-issues which attack the submission of the assumption defense to the jury. His third counter-issue attacks the trial court's denial of his pretrial motion to determine that the Settlement Agreement was unambiguous.

We reverse the trial court's judgment.[1]

### ASSUMPTION

■ At the end of the trial, the court overruled Chase's objection to the submission of Question 1(a), assumption, to the jury on no evidence and insufficient evidence grounds. After the verdict, the trial court granted Chase's motion for judgment notwithstanding the verdict as to the jury's affirmative answer to Question 1(a).

Chase and Dorton complain of each action, respectively.

The trial court is required to submit questions to a jury which are raised by the written pleadings and the evidence. TEX.R. CIV. P. 278. To sustain the action of the trial court in granting a motion for judgment notwithstanding the verdict, we must determine that there is no evidence upon which the jury could have made the findings relied upon. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex. 1982).

■ The jury was asked in Question 1(a) if Dorton's failure to pay the notes was excused by Chase having assumed Dorton's obligation to repay the notes in a memorandum signed by Chase. The jury was instructed that the failure to pay the notes was excused if Chase assumed Dorton's obligation to pay. *Assumption* was defined in the charge as the "unequivocal intent to become personally liable for the debt to the holder of that debt." Neither party objected to this definition.[2] When there is no objection, it is the court's charge that measures the sufficiency of the evidence. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.2000).

In deciding whether or not Chase assumed Dorton's obligation to pay the notes, the jury was authorized to interpret a memorandum to Central National Bank from Chase. The memorandum provided:

> You are authorized to release to Parrish Todd Dorton the shares of common

---

1. This is being designated as an "opinion" rather than a "memorandum opinion" pursuant to Rule 47.4 of the Texas Rules of Appellate Procedure. ("An opinion may not be designated a memorandum opinion if the author of a concurrence or dissent opposes that designation.").

2. Chase only objected to this part of the charge in that there was no evidence and insufficient evidence to support a finding that

Chase assumed Dorton's obligation on the notes; Dorton was not a party to the memorandum and is not a third party beneficiary of the memorandum; the charge did not instruct that the jury must find Dorton is a third party beneficiary; and the instruction failed to define third party beneficiary to the jury. These objections were overruled. Chase only brings issues regarding the ruling on the no evidence and insufficient evidence objections.

stock of Chase Financial Corp. and to renew his two notes for a year without principal or interest payments. Insurors Opportunity will execute a new note purchase agreement and Tom Chase will generate the payment of the renewed notes.

It was signed by Chase as the president of Insurors Opportunity Corporation in March of 2003. The specific day of March was left blank.

■ The memorandum itself is some evidence of an unequivocal intent by Chase to become personally liable for the debt. As stated in the memorandum, Insurors Opportunity was to execute a new note purchase agreement and Chase would generate the payment of the renewed notes. Chase argues on appeal that the term "generate" does not mean he assumed the notes. When no definition is given in the charge, jurors may use any reasonable, ordinary, or common understanding of the words used. *See Taylor v. Lewis,* 553 S.W.2d 153, 159 (Tex.Civ.App.-Amarillo 1977, writ ref'd n.r.e.) (A juror of average intelligence would be presumed to construe the use of a word in its usual and ordinary sense.). *Generate* is defined as "to be the cause of (a situation, action, or state of mind)." Merriam Webster's Collegiate Dictionary 485 (10th ed.1993). According to the charge, the jury was free to interpret the phrase "Tom Chase will generate the payment of the renewed notes" as an admission that Chase would "be the cause of" the payment. In other words, Chase would make the payment of the renewed notes.

At trial, Chase did not controvert the memorandum. He only testified that he did not remember reading the memorandum. He said that someone at Central National Bank must have drafted it, but was then reminded that a representative of the bank testified at a deposition that no one at the bank drafted the memorandum.

Further, the testimony of Todd Moore, a former president of Central National Bank, also presents some evidence that Chase assumed Dorton's obligations to pay on the notes. Moore was particularly familiar with the policies and procedures of the bank when it came to making loans. He understood that it was the policy of the bank to send out notices when notes became due. The bank's system automatically generated a notice 10 days prior to a payment due date or maturity. It then generated past-due notices for 10 days and then 30 days past the due date or past maturity. The loan officer would decide whether or not to send these notices.

Moore also knew that it was common practice for the loan officer to call the borrower when a note was due. Dorton was a focus or strategic customer who was on the "ham and turkey" list; a list of favored customers who would receive either a ham or turkey at the end of the year. Someone on that list would at least receive a phone call when a note became due. It was not normal, in Moore's opinion, for the bank to sell the note of a customer on the "ham and turkey" list to someone else without calling the customer. Knowing the procedures of the bank and assuming that Dorton was not contacted by any of the means available by the bank, Moore concluded that the bank was looking to someone else for payment of the note.[3]

Moore was then shown the memorandum to Central National Bank from Chase. He had never seen a document quite like

---

**3.** Dorton testified that he was not notified by any means that the notes were due or past due.

it. In viewing the memorandum, it appeared to Moore that the bank was looking to Chase for repayment of the note.

Moore's testimony, combined with the memorandum itself, is some evidence upon which the jury could have found an unequivocal intent by Chase to become personally liable for Dorton's debt. Thus, the trial court erred in granting Chase's motion for judgment notwithstanding the verdict regarding Question 1(a). And because there is some evidence of assumption, the trial court, necessarily, did not err in submitting Question 1(a) to the jury. The first subpart of Dorton's first issue is sustained and Chase's counter-issues 1 and 2 are overruled.

Because Dorton would be entitled to a judgment that Chase take nothing on his lawsuit with an affirmative answer by the jury as to only one of Dorton's defenses, we need not reach either the remainder of Dorton's first issue regarding Questions 1(c) and 1(d) or his second issue regarding Question 1(b).

### PRE-TRIAL RULING

■ Chase contends in his third counter-issue that the trial court erred in denying his pretrial motion to hold the Settlement Agreement unambiguous. Chase fails to point to specific evidence that should not have been admitted because the Settlement Agreement was found later to be unambiguous. A brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP. P. 38.1(h). A brief's issues that do not contain such argument "are inadequately briefed and present nothing for review." *Batto v. Gafford,* 119 S.W.3d 346, 350 (Tex. App.-Waco 2003, no pet.); *see Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284, 37 Tex. Sup.Ct. J. 843 (Tex.1994); *Akin v. Bally Total Fitness*

*Corp.,* No. 10–05–00280–CV, 2007 Tex.App. LEXIS 1218, *4–5 (Tex.App.-Waco Feb. 14, 2007, pet. denied) (mem.op.). Counter-issue three is inadequately briefed, presents nothing for review, and is overruled.

### ATTORNEY'S FEES

■ We must now address the issue of attorney's fees. The trial court awarded Chase attorney's fees. Because of our disposition of Dorton's first issue, Chase is no longer the prevailing party and is not entitled to attorney's fees. *See Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 201 (Tex.2004). The trial court's judgment regarding attorney's fees is necessarily reversed, and we need not address Dorton's third issue.

But Dorton contests the trial court's failure to grant judgment in his favor for attorney's fees. Dorton argues that the jury specifically found by their answer to Question 2 in the charge that Chase failed to comply with the Settlement Agreement. However, Dorton was not entitled to recover his attorney's fees.

■ To be entitled to attorney's fees, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *Green Int'l v. Solis,* 951 S.W.2d 384, 390 (Tex.1997). Dorton sued Chase for breach of contract regarding the Settlement Agreement which is an action for which attorney's fees are recoverable. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 1997). The trial court, however, granted Chase's motion for judgment notwithstanding the verdict. That ruling negated the jury's answer to Question 2–that Chase failed to comply with the Settlement Agreement. Dorton did not complain about the trial court's ruling as to Question 2 on appeal. Because the affirmative answer to Question 2 is no longer viable, he has not prevailed on his breach of contract claim.

Further, no damages were awarded to Dorton by the jury on his breach of contract claim. Accordingly, Dorton is not entitled to attorney's fees, and his fourth issue is overruled.

### CONCLUSION

Because we have sustained the first subpart of Dorton's first issue, the trial court's judgment is reversed and judgment is rendered that Chase take nothing from Dorton as a result of this appeal.

Justice VANCE dissenting.

BILL VANCE, Justice, dissenting.

I would affirm the trial court's determination that Chase is entitled to judgment notwithstanding the verdict.

There is no evidence of an unequivocal intent by Chase to personally assume Dorton's obligations. Dorton was neither a "donee beneficiary" nor a "creditor beneficiary" of the Memorandum, so he cannot enforce that agreement. *MCI Telecommunications Corp. v. Texas Util. Co.*, 995 S.W.2d 647, 651 (Tex.1999). The Memorandum does not clearly and fully spell out an intent to benefit Dorton, other than incidentally. *See First Union Nat. Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 929 (Tex.App.-Dallas 2005, no pet.). The evidence does not overcome the presumption that the parties contracted for themselves, and because there is reasonable doubt as to the intent of the parties, the third-party beneficiary claim must fail. *See id.*

Furthermore, the Memorandum was an agreement between Insurors Opportunity and the bank; Chase did not sign it individually.

The two estoppel theories—not discussed by the majority—must also fail for these same reasons.

Finally, the majority ignores the overriding effect of the Settlement Agreement on all of Dorton's theories about why he is not liable for the amounts of the notes.

In granting Chase's motion for judgment n.o.v., which was based solely on *MCI*, the trial judge must have determined that the evidence does not meet the *MCI* test. The majority says the trial judge was wrong but does not discuss *MCI*.

I respectfully dissent.